STATE, EX REL. SNYDER, PROSECUTING ATTORNEY, *v.*
THE PORTLAND NATURAL GAS AND OIL
COMPANY.

[No. 18,541. Filed June 6, 1899. Rehearing denied Nov. 23, 1899.]

CORPORATIONS.—*Monopolies.*—*Restriction of Competition.*—*Gas Companies.*—An agreement entered into by a corporation engaged in furnishing natural gas to the inhabitants of a city, fixing the price of gas to be charged consumers, and stipulating that neither company would furnish gas to persons who were consumers of the other company, is unlawful, and furnishes a basis for a monopoly. *pp. 484-491.*

QUO WARRANTO.—*Corporations—Restriction of Competition.*—*Monopolies.*—*Judgment.*—Where in a *quo warranto* proceeding against a corporation engaged in furnishing natural gas to the inhabitants of a city it is shown that defendant entered into an agreement with a like corporation fixing the price of gas to be charged consumers, the court may, in the exercise of its discretion, declare a forfeiture of defendant's corporate franchise, or the judgment may be a forfeiture or ouster only of the right of defendant to carry out or continue the illegal acts established. *p. 491.*

From the Randolph Circuit Court. *Reversed.*

*Frank H. Snyder* and *William H. Williamson*, for appellant.

*John W. Headington, John F. LaFollette* and *J. J. M. LaFollette*, for appellee.

JORDAN, C. J.—This is a proceeding in *quo warranto* by the State of Indiana on the relation of the prosecuting attorney of the twenty-sixth judicial circuit to dissolve and seize the corporate franchises of appellee. The venue of the cause was changed from the Jay Circuit Court to the Randolph Circuit Court, in which court a demurrer was

State, *ex rel.*, *v.* Portland Nat. Gas Co.

sustained to the information for insufficiency of facts, and judgment·was rendered in favor of appellee thereon. The State appeals and assigns error on the ruling of the court in sustaining the demurrer to the information.

The information alleges that the defendant is a corporation duly organized in December 1886, under the laws of the State of Indiana relating to the incorporation. of manufacturing and mining companies. The object of its organization is to conduct the business of mining oil and gas, and to furnish the same for fuel and illuminating purposes and for propelling machinery, etc. Its place of business or operation is stated to be at the city of Portland, in the State of Indiana. After its incorporation it obtained from said city permission to lay gas pipes along and under the public streets of that city for the purpose of supplying·its inhabitants with gas for light and fuel, and it engaged in furnishing gas to them for such purposes. That the Citizens Natural Gas & Oil Company was also duly incorporated in February 1889, under the same laws and for the same purposes as was defendant, and it also was granted the privilege by the city of Portland to lay its pipes in and along the streets of the city for the same purposes as was defendant, and it engaged in supplying gas to the inhabitants of said city for fuel and light.

After alleging these facts, the information charges that the defendant, on the 1st day of September, 1891, "in violation of law and in the abuse of its corporate powers and in the exercise of privileges not conferred upon it by law" entered into a certain agreement or combination with said Citizens Gas & Oil Mining Company "to fix the rate of gas to be charged by them and each of them to the consumers in said city of Portland." It was further agreed by and between the defendant and said other mentioned company that "neither of said companies should or would attach the service pipes of any gas consumer in said city to its pipe lines

State, *ex rel.*, *v.* Portland Nat. Gas Co.

if, at the time, such customer or consumer was a patron of the other company."

It is further averred that the defendant has observed and complied with said agreement, and the price of gas has been fixed thereby, and it has at all times refused to sell or furnish gas to the inhabitants of said city at any other price than the one fixed by said agreement, and, in pursuance of said agreement and in order to prevent competition, it has refused, and still refuses, to supply divers inhabitants of the said city of Portland with gas who, as it is alleged, were consumers of gas from the pipe line of the said Citizens Gas & Oil Mining Company. It is further alleged that there is no other corporation, company or person in said city engaged in supplying gas for light and fuel to its inhabitants.

The information is not a model pleading, and may perhaps be said to be open to the objection that in some respects it is uncertain, and in others states conclusions instead of facts. The question, however, presented for our decision is: Are the facts, as therein alleged, sufficient to entitle the State to demand that the appellee's corporate franchises shall be declared forfeited?

Reduced to a simple proposition, the gravamen upon which it bases its demand for a forfeiture of the defendant's corporate rights is that it has, by an agreement, illegally united with the Citizens Gas, etc., Company, a competing company, under which agreement the price of gas to be charged consumers has been fixed, and has agreed with said company that neither would furnish gas to persons who were patrons of the other company. By this agreement, it appears that it was controlled and at all times refused to furnish its product to divers inhabitants of the city of Portland, simply because they were consumers of gas from the lines of the Citizens Gas Company.

The insistence of counsel for the State is that the defendant, under the facts charged in the information, is shown to have combined with the Citizens Gas Company to fix and

maintain the price of gas, and that these companies agreed with each other not to furnish gas to consumers who were patrons of the other company, in order to prevent legitimate competition; that, in carrying out the compact or agreement, the defendant exercised powers not conferred by law, and committed an act violative of law, and is shown to have abused the rights conferred upon it by the State; and hence it ought to be ousted from longer or further exercising its corporate rights.

The code provides that an information may be filed against a corporation when it does, or omits, acts which amount to a surrender or forfeiture of its rights and privileges as a corporation, or when it exercises powers not conferred by law. §1145 Burns 1894, §1131 R. S. 1881 and Horner 1897, 4th subdivision. The statute exacts that the information "shall consist of a plain statement of the facts which constitute the grounds of the proceeding addressed to the court." §1147 Burns 1894, §1133 R. S. 1881 and Horner 1897,

The authorities assert, as a general rule, that courts will proceed with extreme caution in the forfeiture of corporate franchises, and a corporation will not be deprived thereof unless under express limitation, or for a plain abuse of its powers, whereby it fails to fulfil the design and purpose of its organization. When the State seeks to destroy the life of an incorporated body, it is required to show some grave misconduct, some act at least by which it has offended the law of its creation, or something material which tends to produce injury to the public, and not merely that which affects only private interests for which other adequate remedies are provided. High's Extra. Leg. Rem. §§649, 654; *People* v. *North River, etc., Co.*, 121 N. Y. 582; *State Bank* v. *State*, 1 Blackf. 267. Where, however, the facts disclose that a corporation has failed in the discharge of its corporate duties by uniting with others in carrying out an agreement, the performance of which is detrimental or injurious to the public,

it thereby may be said to offend against the law of its creation, and consequently forfeits its right longer to exercise its franchises and is subject to a judgment of ouster. *People* v. *North River, etc., Co.*, 54 Hun 354, and 121 N. Y. 582; *State* v. *Oberlin Building, etc., Assn.*, 35 Ohio St. 258; *State* v. *Cincinnati, etc., R. Co.*, 47 Ohio St. 130; *State* v. *Standard Oil Co.*, 49 Ohio St. 137; High's Extra. Leg. Rem. §666.

Courts have enlarged the rule so that an information in the nature of a *quo warranto* is now regarded not only as appropriate means of testing the right to exercise corporate franchises, but such proceedings are also a proper remedy for the abuse by a corporation of the powers with which it has been invested. Beach on Pr. Corp. §53. Of course, as asserted by the authorities previously cited, proceedings in *quo warranto* will not be countenanced or receive the sanction of a court, as a general rule, where the act complained of is of a trivial character or where the abuse charged may be said to be a doubtful one, or there exists any other adequate or ample remedy therefor. Beach on Pr. Corp. §436.

Corporations are recognized as creatures of the law and they certainly owe obedience thereto, and when they fail to perform duties which they were created to discharge, and in which the public have an interest, or where they do unauthorized or forbidden acts, the State unquestionably has the right, and it is its duty, to object, and it may interpose by information, and wrest from the offending corporation its franchises. Beach, *supra*, §§840 and 841; Cook on Stock and Corp. Law, §635; *People* v. *Dashaway Assn.*, 84 Cal. 114.

Appellee is in its nature a public corporation, which fact has been recognized by our legislature in conferring upon companies engaged in a business of like character the right of eminent domain. Acts 1889, p. 22, §5103 Burns 1894. Being the creature of the law, the franchises granted to it by the State, in theory at least, were granted as a public

benefit, and in accepting its rights, under the laws of the State, it impliedly agreed to carry out the purpose or object of its creation, and assumed obligations to the public; and such obligations it is required to discharge.    Beach on Monopolies and Industrial Trusts, §221; *Thomas* v. *Railroad Co.*, 101 U. S. 71.

It certainly can be said, and the proposition is sustained by ample authority, that, in furtherance of the purposes for which it was created, it owed a duty to the public.    Its duty towards the citizens of the city of Portland and their duty towards it may be said to be somewhat reciprocal, and any dealings, rules or regulations between it and them, which do not secure the just rights of both parties, can not receive the approbation of a court.    The law, among other things, exacted of appellee the duty to offer and supply gas impartially so far as it had the ability or capacity to do so, to all persons desiring its use within the territory to which its business was confined, provided always such persons made the necessary arrangements to receive it and complied with the company's reasonable regulations and conditions.    *Portland Natural Gas, etc., Co.* v. *State*, 135 Ind. 54, and authorities there cited; *People* v. *Chicago Gas Trust Co.*, 130 Ill. 268; *Chicago, etc., Co.* v. *People's, etc., Co.*, 121 Ill. 530; *Westfield Gas, etc., Co.* v. *Mendenhall*, 142 Ind. 538; *Central Union Tel. Co.* v. *Bradbury*, 106 Ind. 1; *Central Union Tel. Co.* v. *Falley*, 118 Ind. 194; *Central Union Tel. Co* v. *Swoveland*, 14 Ind. App. 341; 8 Am. & Eng. Ency. of Law, 614.

It is an old and familiar maxim that "Competition is the life of trade," and whatever act destroys competition, or even relaxes it, upon the part of those who sustain relations to the public, is regarded by the law as injurious to public interests and is therefore deemed to be unlawful, on the grounds of public policy.    Greenhood on Public Policy, pp. 654, 655; *Chicago, etc., Co.* v. *People's, etc., Co., supra; Gibbs* v. *Consolidated, etc., Co.*, 130 U. S. 396; *Hooker* v.

*Vandewater*, 4 Denio, 349; *Consumers Oil Co.* v. *Nunne-maker*, 142 Ind. 560; Beach on Pr. Corp. §§54, 55.

The authorities affirm, as a general rule, that, if the act complained of, by its results, will restrict or stifle competition, the law will regard such act as incompatible with public policy, without any proof of evil intent on the part of the actor or actual injury to the public. The inquiry is not as to the degree of injury inflicted upon the public; it is sufficient to know that the inevitable tendency of the act is injurious to the public, *Central Ohio, etc., Co.* v. *Guthrie*, 35 Ohio St. 666; *Swan* v. *Chorpenning*, 20 Cal. 182; *State* v. *Standard Oil Co.*, 49 Ohio St. 137; *Gibbs* v. *Smith*, 115 Mass. 592; *Richardson* v. *Buhl*, 77 Mich. 632; *Pacific Factor Co.* v. *Adler*, 90 Cal. 110; Beach on Monop. and Ind. Trusts, §82.

Recognizing and adopting the principles to which we have referred as sound law, we next proceed to apply them as a test to the facts involved in this case. It will not be unreasonable to presume that one of the objects upon the part of the city of Portland in granting permission to the Citizens Gas Company to lay its pipes and mains along and under the streets of that city, after it had awarded the same rights to appellee, was that there might be a reasonable and fair competition between these two companies. By the agreement in question, when carried into effect, the patrons of one company were excluded from being supplied with gas from the other company. Each company was, by the terms of the agreement, bound to abide by and maintain the prices fixed, and each was prohibited from furnishing gas to the customers of the other.

That the people of that city who desired to become consumers of gas were, by the agreement in question, deprived of the benefits that might result to them from competition between the two companies certainly can not be successfully denied. The exclusion of competition, under the agreement, redounded solely to the benefit of appellee and the

other company, and the enforcement of the compact between them could be nothing less than detrimental to the public. By uniting in this agreement appellee disabled, or at least professed to have disabled, itself from the performance of its implied duties to furnish gas impartially to all, and thereby made public accommodations subservient to its own private interests.

The agreement in controversy, as it is disclosed by the facts averred in the information, evidently could serve, so far as the public was concerned, no other purpose than a restriction upon competition, and created at least a basis for a monopoly. The law, as we have seen, is inimical to monopolies, and recognizes the right of the public to have the benefit of a fair and healthy competition, and requires that equal facilities and reasonable rates, in carrying out the purposes of such business as that in which appellee is engaged, so far as practicable, be secured to all.

In *Consumers Oil Co.* v. *Nunnemaker*, 142 Ind. 560, we said: "The law has always been hostile to the creation of monopolies when they tend to impair the interest of the public. It is elementary that whatever is injurious to or against the public good is void on the ground of public policy. This policy unquestionably favors competition in trade to the end that its commodities may be afforded to the consumer as cheaply as possible, and is opposed to monopolies which tend to advance prices to the injury of the public in general."

In the appeal of *Thomas* v. *Railroad Co.*, 101 U. S. 71, Miller, J., speaking as the organ of the court, said: "Where a corporation, like a railroad company, has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions which undertakes, without the consent of the state, to transfer to others the rights and powers conferred by the charter, and to relieve the grantees of the burden

which it imposes, is a violation of the contract with the state, and is void as against public policy."

While appellee, by the agreement in controversy, can not be said to have fully renounced autonomy, still it did so to the extent, at least, that it thereby disabled itself from supplying persons with gas who were patrons of the other company. That, by entering into this agreement and carrying it into execution, appellee violated the principles of public policy, and clearly abused the rights and powers conferred upon it by the State, and may be said to have offended against the law of its creation, there can be no question. Such an illegal act or agreement upon the part of a corporation like appellee can not be permitted to override the law, and it was the manifest duty of the State to interpose, as it has done, and call it to account; and, if the charge made is established, a deserving penalty ought to be inflicted.

In addition to the prayer for the forfeiture of appellee's rights as a corporation, the information asks that such other relief be granted as is just and proper. The rule is well settled that a court in cases in *quo warranto* proceedings like this, if the facts justify, may, in the exercise of its discretion, render a judgment against defendant declaring a forfeiture of its corporate franchises, or the judgment may be a forfeiture or ouster only of the right of the defendant to carry out or continue the illegal act or acts charged and established. *State* v. *Standard Oil Co.,* 49 Ohio St. 137; Cook on Stock and Corp. Law, §635.

From what we have said it follows that the court erred in sustaining appellee's demurrer to the information, and the judgment is therefore reversed and the cause remanded with instructions to the trial court for further proceedings consistent with this opinion.