## THE RICHMOND NATURAL GAS COMPANY v. CLAWSON.

[No. 18,550. Filed December 21, 1900.]

GAS.—*Discriminating Charges.—Enforcement.*—A rule promulgated by a natural gas company engaged in furnishing gas o the public under a franchise of a city fixing the price of gas to consumers at twelve and one-half cents per thousand cubic feet when used for fuel purposes only, and, when used by consumers for both fuel and illuminating purposes, at twenty cents per thousand cubic feet for both purposes, unjustly discriminates against consumers who use gas for both purposes, and cannot be enforced.

From the Wayne Circuit Court. *Affirmed.*

*J. F. Robbins* and *T. J. Study,* for appellant.

*A. C. Lindemuth,* for appellee.

JORDAN, J.—Appellee successfully prosecuted this action in the lower court, to enjoin appellant from shutting off his supply of natural gas from his residence situated in the city of Richmond.

The errors assigned are based upon overruling appellant's demurrer to the complaint, denying its motion for a new trial, and upon exceptions reserved to the several conclusions of law stated by the court upon its special finding of facts. The special finding of facts discloses substantially the following: The Richmond Natural Gas Company was incorporated on the 5th of March, 1886, under the laws of this State, and obtained a franchise or privilege from the

city of Richmond, Wayne county, Indiana, granting the said company the right to lay under its streets, alleys and 'avenues, etc., its gas pipes and mains for the supply of natural gas to said city and the citizens thereof, subject to the conditions and regulations in the ordinance set out and provided. One of the objects for which said company seems to have been incorporated was to supply consumers of the city of Richmond, and in the vicinity, with natural gas.

Section one of the ordinance of the city, under which the franchise was granted to appellant gas company, reads as follows: "Be it ordained by the common council of the city of Richmond, That 'The Richmond Natural Gas Company' of said city be and is hereby granted the right to lay under the surface of such of the streets, alleys, lanes, avenues and thoroughfares in said city as may be necessary therefor, gas pipes and mains for the supply of natural gas to said city and the citizens thereof, subject to the conditions and regulations hereinafter set out and provided."

Section nine of the same ordinance is as follows: "Any and all residents of said city shall have the absolute right to use the gas along the lines, mains and pipes laid by said company hereunder, and no regulations respecting tapping or connections with said mains or pipes by citizens shall be made which do not apply alike to all citizens. And in case said company shall not make and publish reasonable regulations permitting any and all citizens to tap their mains and pipes for the purpose of taking gas therefrom, for the use of said person or company, then and in any such case the common council of said city shall have power and authority hereunder to authorize any such person, company or corporation, on application to said council, to tap said pipes under the supervision and direction of the civil engineer of the said city. All right of tapping mains and pipes hereunder shall be subject to the payment by the person, company or corporation tapping the same, of such

rates as are fixed by said company for the general use of such gas, or by agreement of such person and said company."

Appellant duly accepted in writing the provisions and conditions of the ordinance heretofore mentioned on the 15th day of March, 1886, and thereafter, in the month of December, 1888, began to supply natural gas to the consumers of the city of Richmond, and from that time on it has continued to furnish, and is still furnishing, natural gas to consumers of that city.

For the first two years from the time appellant began to furnish natural gas to consumers in the city of Richmond, it furnished the same through mixers, but thereafter the company put in meters and supplied its consumers, when requested, with gas by meter measurement, and has so continued, and it now has from 1,200 to 1,300 patrons who pay for the natural gas consumed by meter measurement at so much per 1,000 cubic feet.

In the year 1893, and up to the date of the commencement of this action, appellant was notified by divers of its patrons in said city at the time they applied to it for meters that they desired to and intended to use such natural gas for illuminating purposes as well as for heating their houses, and with a full knowledge and notice of such fact appellant supplied and put in the meters so requested, and the consumers thereafter used and consumed natural gas both for illuminating and heating purposes continuously; and appellant received and accepted pay from its patrons for gas which had been consumed for both heating and light. The rate of gas so consumed up to the 1st day of October, 1897, was fixed by the gas company at the uniform rate of twelve and one-half cents per 1,000 cubic feet. Appellant received payment at such rates from its consumers with the knowledge that gas had been consumed for both heating and illuminating purposes; and appellant, with such knowledge, took no steps or action to prevent the

use of such natural gas by its patrons for illuminating purposes. The price charged by appellant for gas supplied by it to any and all of its consumers, other than manufacturers, by meter measure, after it adopted, as heretofore stated, that method, up to the 1st day of October, was twelve and one-half cents per 1,000 cubic feet whether said gas was used for heating alone or for both heat and light. Consumers which were classed as domestic included all residences, stores, etc.

On the 1st day of September, 1897, appellant company adopted and promulgated the following notice, to wit: "Notice to consumers of natural gas. Beginning October 1, 1897, the rate for natural gas, when used for fuel and light, will be twenty cents per 1,000 cubic feet. When used for fuel only, the rate will be the same as heretofore, twelve and one-half cents per 1,000 cubic feet. Richmond Natural Gas Company."

Appellee, Clawson, is now, and has been for more than twenty-five years last past, a *bona fide* resident of the city of Richmond, Wayne county, Indiana, and has occupied, for more than five years last past, and still occupies a dwelling-house and residence situated in said city, number forty-two North Seventh street, with his family consisting of himself, his wife and two children. Prior to the time appellee began using natural gas supplied by the defendant by meter measure, he had been one of the appellant's patrons and had used and consumed its gas for heating purposes through mixers. In September, 1896, he fitted, and caused to be fitted by an experienced plumber, his house with necessary gas pipes, fixtures, and Welsbach burners for the purpose of using and consuming the said natural gas of the defendant, for illuminating purposes in his said house as well as for heating the same. A short time before piping his said residence and fitting the same up for the use of natural gas for both heating and light, appellant furnished appellee with a meter and placed the same in his

residence and made the proper connections for consuming its gas by meter measurement, for which meter appellee paid appellant the sum of $15. Thereafter appellee consumed and used the gas supplied to him by appellant for both heating and lighting purposes in his residence, consuming the same for heating purposes in two stoves and one grate and for lighting in three rooms by single jets which were furnished with Welsbach burners; and thereafter appellee paid appellant monthly the uniform rate of twelve and one-half cents for each 1,000 feet of natural gas used and consumed by him for heating and lighting, as shown by said meter.

On the 1st day of September, 1897, appellee received from appellant the notice adopted by it, and heretofore set out, in respect to the change in the rate of gas when used both for fuel and illuminating purposes. About the 1st day of October, 1897, appellee called at the office of appellant in the city of Richmond and notified it that he was using gas for both heating and lighting his residence by meter measure and that he desired to continue to use gas for such purposes, stating that he was willing to pay twenty cents per 1,000 cubic feet for gas for lighting purposes and twelve and one-half cents per 1,000 feet for heating purposes, but that he objected and refused to pay twenty cents per 1,000 feet for such gas when used for both heat and light. Appellee at that time demanded of appellant that it furnish him with a separate meter with which to measure the gas used and consumed by him for light, to be measured separate and apart from that used by him for heat, and tendered to appellee the sum of $15, the same being the price charged by it for meters. Appellant refused this request of appellee, and thereupon the latter asked the permission and consent of appellant to put in such separate meter for himself, which permission appellant refused to give. Appellee thereafter continued to use and consume natural gas furnished him by appellant for both heat and light during the

said month of October, 1897. On the 1st day of November, 1897, he received from appellant a statement of the gas consumed by him during said month of October and was charged therefor at the rate of twenty cents per 1,000 cubic feet, making a total of $3.80. On the 2nd or 3rd day of November, 1897, appellee called at the office of appellant and tendered to it the sum of $2.38, the same being at the rate of twelve and one-half cents per 1,000 cubic feet for the gas which he had consumed during the said month of October, which sum appellant refused to accept and appellee was informed by its proper officers that if he put in a separate meter without the company's consent, or refused to pay the gas bill demanded of him by the company at the rate of twenty cents per 1,000 feet, they would shut off his gas.

Appellee had previously at all times paid appellant all gas bills and had complied with its reasonable rules and regulations and was still willing to do so. Appellant, at the time of the commencement of this action, was threatening to enforce the rule, which is hereinbefore referred to, against appellee, and to charge both him and all other domestic consumers who used its natural gas for heating and illuminating purposes the sum of twenty cents per 1,000 cubic feet, but would permit all other domestic consumers, who used said gas for fuel alone, to do so at the uniform rate of twelve and one-half cents per 1,000 cubic feet.

Appellant has enforced the rule since the 1st day of October, 1897. Appellee has fitted up and plumbed his house for the use of said natural gas and his stoves and grates are fitted with the necessary and proper burners for the use of natural gas for heating purposes, and in doing so he has been subjected to considerable expense and his residence, at the time of the commencement of this action, was not fitted or adapted to the use of any other fuel or gas for heating and illuminating purposes. In the event the

supply of gas was shut off and he was deprived of the use thereof by appellant, he would be required to remove the burners from his stoves and grates and to adapt and change his house at considerable expense in order successfully to use other fuel for heating and lighting purposes and he and his family would thereby be liable to suffer great loss and injury.

It is disclosed by the special finding that at the time appellant began to furnish its natural gas to the citizens of the city of Richmond, there was located within that city, and ever since has been, an incorporated artificial gas company engaged in the business of furnishing artificial gas for the lighting of dwellings, stores, shops and houses generally of the citizens of the city, which were all properly adapted for illuminating, which artificial gas company, as the court finds, is now and for many years last past has been, charging and receiving, as its price for its gas so furnished, $1.50 per 1,000 cubic feet, or $1.20 in the event the bill for gas is paid within ten days after each month's gas bill has become due.   Neither the articles of incorporation of the defendant nor the ordinance, under which it obtained its franchise from the city, specifies or indicates the manner or purpose for which natural gas was to be supplied to consumers of the city of Richmond, nor was any price fixed thereunder for which natural gas should be furnished to such consumers.   The only place in the ordinance where the use of natural gas supplied by appellant is referred to is contained in sections one and nine of the ordinance as heretofore set out.

On the foregoing facts the court stated four conclusions of law, of which the fourth is as follows:   "The rule promulgated by the defendant, on the 1st day of September, 1897, fixing the price of gas to consumers at twelve and one-half cents for 1,000 cubic feet, when used for fuel purposes only, and when used by consumers for both fuel and illuminating purposes, at twenty cents per 1,000 cubic feet

for both purposes, unjustly discriminates against those consumers who use such gas for both purposes, as far as the use of such gas for fuel purposes is concerned, and can not be enforced against them in their use of such gas for such purpose."

This last conclusion of law is the one of which appellant more especially complains. The principal contentions of its counsel are: (1) That the complaint is not sufficient on demurrer; (2) that the special finding of facts does not warrant the fourth conclusion; (3) that the evidence does not sustain the finding.

It is insisted that appellant had the lawful right, as it did, to divide its domestic consumers into two classes by the rule adopted and published under the notice given, such classification including (1) those who used gas under the meter system for fuel only, (2) those who consumed it under the same system for both heating and illuminating purposes. It is contended that appellant had the right to exact from the latter class a greater price or rate per 1,000 cubic feet, for the gas consumed for such purposes, than was charged to and paid by consumers constituting the first class. Such a classification, it is contended, under the circumstances in this case, is not an unjust or unlawful discrimination upon the part of appellant in fixing the price to be charged for the gas which it furnished, for the reason that the classification in question applied alike, under similar circumstances or conditions, to all of the consumers of appellant's gas.

On the part of counsel for appellee it is insisted: (1) That the company was required to furnish natural gas to consumers not only for fuel but also, if desired by them, for illuminating purposes. (2) That a discrimination, under the rule adopted, whereby one domestic consumer was charged twelve and one-half cents per 1,000 cubic feet for gas used for fuel only, and another was charged twenty cents for the same amount, solely because he consumed an

additional quantity for light, is an arbitrary, and unlawful discrimination.

The rule of the common law so universally recognized and enforced declares that persons, either artificial or natural, engaged in conducting a business which is public in its character or nature or which is impressed with a public interest, can not arbitrarily select their patrons, but must serve impartially or on equal terms and at reasonable rates all who apply for service. It is true that this rule can not be interpreted as requiring absolute uniformity of rates or prices nor as prohibiting, under any and all circumstances, a discrimination by performing services for one person at a price or rate lower than that exacted of others. This doctrine is more frequently enforced in respect to railroad companies and other common carriers, and while the latter can not arbitrarily select their patrons, still they are not prohibited from undertaking the transportation of wares or goods of one patron at an unreasonably low rate or from conferring upon him other practical advantages in respect to such transportation not extended to his competitors or to the public in general.

It is disclosed that the ordinance adopted by the common council of the city of Richmond granted to appellant the right to lay its pipes and mains under the streets, alleys, and thoroughfares of that city *"for the supply of natural gas to said city and the citizens thereof."* (Our italics.) Appellant is in its nature a public corporation and the business which it was organized to carry on, by virtue of the statutes by which it was created, is impressed with a public interest, which fact was recognized by the legislature when it conferred upon it, and other companies of like character, the right of eminent domain. Acts 1889, p. 22, §5103 Burns 1894. It is the creature of the law, and the rights and privileges conferred upon it by the State, in theory at least, were granted not only for its own private benefit, but also for the benefit and good of the public, and in accept-

ing them it impliedly, at least, agreed to carry out the purposes or objects of its creation, and assumed a duty or obligation towards the public which it will, under the law, be required to discharge. *State, ex rel.,* v. *Portland Natural Gas Co.,* 153 Ind. 483. The duty which corporations like appellant owe to the public has been repeatedly stated and declared by the decisions of this court. *Portland Natural Gas, etc., Co.* v. *State,* 135 Ind. 54, 21 L. R. A. 639; *Westfield Gas, etc., Co.* v. *Mendenhall,* 142 Ind. 538; *Coy* v. *Indianapolis Gas Co.,* 146 Ind. 655, 36 L. R. A. 535; *City of Rushville* v. *Rushville Natural Gas Co.,* 132 Ind. 575, 15 L. R. A. 321; *Central Union Tel. Co.* v. *Bradbury,* 106 Ind. 1; *Central Union Tel. Co.* v. *Falley,* 118 Ind. 194; *State* v. *Portland Natural Gas Co.,* 153 Ind. 483.

In the case last cited the appellee therein had been granted the right or privilege by the city of Portland to lay its pipes and mains under the public streets of that city for the purpose of supplying the inhabitants thereof with natural gas for light and fuel. In considering, in that appeal, the duty of a gas company to the public, we said: "Its duty towards the citizens of the city of Portland and their duty towards it may be said to be somewhat reciprocal, and any dealings, rules or regulations between it and them, which do not secure the just rights of both parties, can not receive the approbation of a court. The law, among other things, exacted of appellee the duty to offer and supply gas impartially so far as it had the ability or capacity to do so, to all persons desiring its use within the territory to which its business was confined, provided always such persons made the necessary arrangements to receive it and complied with the company's reasonable regulations and conditions." (Citing authorities.)

Counsel for appellant seemingly contend (1) that it is not shown that natural gas for illuminating purposes is of less value than the same is for fuel, or that such gas, when used for both light and fuel, is not reasonably worth twenty

cents per 1,000 cubic feet, and, hence, it is asserted, that it does not appear that appellant, under this rule, has unjustly or injuriously discriminated against appellee; (2) that it is not disclosed how many feet of gas he consumed for fuel and how much for light, consequently, it is insisted, that it can not be claimed that there has been any discrimination so far as he is concerned. These contentions, in our opinion, are not impressed with merit. Counsel for appellee concedes, and properly so we think, that companies engaged in furnishing gas and water, etc., to the public may make classifications in respect to their patrons or customers and adopt reasonable rules and regulations for the control of such classes, but that the classification must be reasonable and impartial, and not arbitrary or of an unjust, discriminating character but that due regard must be had to the rights of the citizens of the town or city depending upon such companies for their supply of water or gas, as the case may be, and that all occupying similar or like positions must be treated impartially. *Portland Natural Gas Co.* v. *State,* 135 Ind. 54; *Coy* v. *Indianapolis Gas Co.,* 146 Ind. 655; *State* v. *Portland Natural Gas Co.,* 153 Ind. 483, and cases cited; *Haugen* v. *Albina Light, etc., Co.,* 21 Ore. 411, 28 Pac. 244; *Shepard* v. *Milwaukee Gas Light Co.,* 6 Wis. 526; *Young* v. *City of Boston,* 104 Mass. 95. See cases collected in note to *City of Rushville* v. *Rushville Natural Gas Co.* (132 Ind. 575), in 15 L. R. A. 321.

Appellant, during the nine years of its operation and prior to the adoption of the rule in dispute, seems to have recognized but two classes of consumers, namely, manufacturers and domestic. To the latter class appellee belonged. For a period of about four years and over, he, along with other consumers, used appellant's gas both for fuel and light, the amount so consumed for such purposes being ascertained by means of meters. Of this fact appellant had full knowledge and accepted pay for the gas so consumed at the rate of twelve and one-half cents per 1,000 cubic feet.

In 1897, as shown, it adopted the rule in question requiring its patrons who used gas for both fuel and light to pay the increased price of twenty cents per 1,000 feet.  The rate or price as to all others who used gas for fuel only remained, as previously fixed, at twelve and one-half cents per 1,000 feet.  Under this rule appellant did not profess to have any regard or consideration for the amount consumed for light. If any patron, using gas for heating his dwelling, also employed one jet about his dwelling whereby a small amount of natural gas was consumed each month for light, he was amenable and subject to the rule in like manner as the fuel consumer would be who used many jets about his premises for illuminating purposes.  The amount consumed for light does not seem to be a feature of any importance within the meaning of the rule in question.  Such a regulation, under the facts in this case, when tested by the principle affirmed and sustained by the authorities, must certainly be held unreasonable, arbitrary and unjust.  That this is so is evident we think without further comment.

Counsel for appellant refer us to *Philadelphia Co.* v. *Park & Brothers,* 138 Pa. St. 346, 22 Atl. 86.  The holding in that appeal, however, lends no support to their contention upon the question here involved.  The rule there affirmed was to the effect that a manufacturing company supplied by a gas company with natural gas under a contract that it was to be used for fuel only, by using gas from the gas mains for illuminating purposes, will be held liable to pay, for gas consumed for such latter purpose, the reasonable value thereof at the usual market price.

The special finding in the case at bar is in harmony with and supports the complaint and warrants the fourth conclusion of law, and the evidence sustains the finding.  Under the facts appellee established a case which entitled him to the equitable relief demanded and secured by the judgment of the lower court.  None of appellant's assignments of error is sustained, and the judgment is therefore affirmed.