BUSH ET AL. v. STATE OF INDIANA. EX REL WERNECKE.

[No. 23,179. Filed April 23, 1918.]

1. QUO WARRANTO.—*Information.*—*Nature.*—The Code of 1852 substituted a remedy by civil action for the information in the nature of *quo warranto* as the latter remedy existed under the earlier statutes and, as the substituted remedy was re-enacted without change in 1881, the rules of pleading governing civil actions have since applied in *quo warranto.* p. 344.

2. QUO WARRANTO.—*Information.*—*Statement of Grounds.*—Section 1190 Burns 1914, §1133 R. S. 1881, requiring that information shall consist of a plain statement of the facts which constitute the grounds of the proceeding, intends something more than the general statements and legal conclusions which were sufficient at common law in such proceedings. p. 345.

3. APPEAL.—*Harmless Error.*—*Ruling on Pleading.*—In *quo warranto* against a corporation on the ground that it was not legally incorporated, the refusal on motion to require a statement of the facts necessary to sustain the conclusions alleged in the information, though error, under §343a Burns 1914, Acts 1913. p 850, was not so prejudicial as to require reversal, where the defendant by answer set up all the steps taken by it to incorporate and the sufficiency of the answer was tested by demurrer which was sustained, the defendant refusing to plead further, since the ruling merely had the effect of shifting the burden of pleading the facts. p. 345.

4. CONSTITUTIONAL LAW.—*Attack of Statute by State.*—The state had the right to attack the constitutionality of the statute under which the defendants claim to be incorporated. p. 347.

5. STATUTES. — *Title and Subject.* — *Construction.* — Where the title to an act is broad enough to comprehend different matters that may be included in the subject as means to the end expressed in the title, doubts will be solved in favor of upholding the statute. p. 348.

6. STATUTES.—*Title and Subject.*—Section 19, Art. 4, of the Constitution, as to the title and subject of an act, is not violated by §8233b *et seq.* Burns 1914, Acts 1913 p. 433, relative to the formation of associations to drain and reclaim wet lands, there being nothing embodied in the act that is foreign to the purpose as expressed in the title. p. 349.

7. DRAINS.—*Associations.*—*Objects.*—*Statute.*—It was not the purpose of the legislature, by the use of the disjunctive con-

Bush *v.* State, ex rel.—187 Ind. 339.

junction "or" in connecting the words specifying the various improvements authorized by §8233b Burns 1914, Acts 1913 p. 433, to require the formation of several corporations to construct the different parts of one general project of reclamation, nor to require separate contracts for each class of work combining to constitute the improvement as a whole; and the formation of a corporation for the purpose of constructing all of the various improvements enumerated in §1 of the act is valid, and not objectionable on the theory that its purpose is to engage in separate and distinct lines of business. (*Williams* v. *Citizens, etc., Co.,* 25 Ind. App. 351, and *Burke* v. *Mead,* 159 Ind. 252, distinguished.)   p. 349.

8. DRAINS.—*Associations.—Articles.—Signing and Acknowledging.—*Articles of association drawn under §8233b Burns 1914, Acts 1913 p. 433, relative to the formation of associations to drain and reclaim wet lands, were not invalidated on the grounds that two signatures thereto were not acknowledged, where the articles were duly signed and acknowledged by each of the original members and the two signatures were those of interested persons who became members after the execution of the articles and the election of directors in accordance with §5 of the act, which provides that owners of land affected may become members by signing the articles after the filing and recording thereof.   p. 351.

9. DRAINS.—*Associations.—Articles.—Objects.—*Articles for the formation of a corporation to reclaim wet and overflowed lands, under §8233b *et seq.* Burns 1914, Acts 1913 p. 433, were not invalidated on the grounds that they contained no definite description of the work to be undertaken, in view of §12 of the act, which provides that the directors, before commencing the work, shall cause to be made a careful survey, plans and specifications of the proposed work, etc., as this provision was intended to obviate the necessity of stating a particular description in the articles. (*West* v. *Bullskin, etc., Ditching Co.,* 32 Ind. 138; *O'Reiley* v. *Kankakee, etc., Draining Co.,* 32 Ind. 169; *Skelton Creek Draining Co.* v. *Mauck,* 43 Ind. 30; *Crawford* v. *Prairie Creek Ditching Assn.,* 44 Ind. 361, distinguished.)   p. 351.

From Vigo Circuit Court; *Charles L. Pulliam,* Judge.

Action by the State of Indiana, on the relation of Richard Wernecke, against Ernest G. Bush and others. From an adverse judgment, the defendants appeal. *Reversed.*

*Hutchison & Burns* and *Duvall & Whittaker,* for appellants.

*William Horsley, Finley A. McNutt* and *Harry S. Wallace,* for appellee.

LAIRY, J.—This is an action of *quo warranto* brought by the State of Indiana, on the relation of the prosecuting attorney of the Forty-Third judicial circuit of Indiana, against appellants. The material allegations of the complaint are as follows: "That said defendants have been for more than two years last past, and still are, usurping the franchise of being a corporation by the name and style of the Reservoir Improvement Company in the counties of Vigo and Clay in the State of Indiana; and that by that name are pleading and being impleaded, contracting and being contracted with, and otherwise acting as a corporation within Vigo and Clay counties, in the State of Indiana, without being legally incorporated; that as such pretended corporation said defendants as an association of persons, have acted within the said counties and state as a corporation without being legally incorporated. * * * The relator would give the court to understand and be informed that said defendants have never been and are not now legally incorporated, and during a period of more than two years last past have so usurped the franchise of being a corporation as aforesaid. Wherefore, this relator asks the court that said defendants be required to show by what right they claim to have and enjoy the privileges of such corporation."

Appellants' motion for an order requiring appellee to make the complaint more specific was overruled, and thereafter appellants filed a joint and several answer, to which a demurrer was addressed by appellee. The court sustained this demurrer and, upon appellants' re-

fusing to plead further, judgment was rendered against them.

Appellants assert that the court erred in overruling their motion for an order requiring the complaint to be made more specific. It is conceded that the complaint is sufficient to withstand a demurrer under the authority of *Smith* v. *State, ex rel.* (1895), 140 Ind. 343, 39 N. E. 1060; but it is asserted that the material allegations do not tender any certain and definite issue by reason of the general and indefinite character of the language employed. It is alleged that the defendants had been for more than two years, and at the time the complaint was filed still were, usurping the franchise of being a corporation; and, as such, that they were pleading and being impleaded, contracting and being contracted with, in the corporate name they have assumed, and were otherwise acting as a corporation without being legally incorporated. By the motion it was asked that the plaintiff be required to state in the complaint the facts relied on as showing that the corporation was not legally organized and incorporated, and showing that it was usurping the powers, rights and franchises of a corporation without being legally incorporated.

The common-law writ of *quo warranto* was in the nature of a writ of right against him who claimed or usurped any office, franchise or liberty to inquire by what authority he supported his claim in order to determine the right. 3 Blackstone's Commentaries (Book 3) ch. XVII. The procedure under the writ was civil and not criminal in its nature, being prosecuted by the king through his attorney-general without any relator to try the mere civil right to some office, liberty, or franchise which was being claimed or exercised by some person in violation of the prerogative right of the sovereign. The writ soon fell into disuse in England and was suc-

ceeded by the information in the nature of *quo war-ranto,* which was criminal in its nature, involving a fine or imprisonment in addition to a judgment of ouster.   The proceeding by information in the nature of *quo warranto* lost its criminal character, in every-thing except form, long before the American Revolution, and was applied to enforcing civil rights, seizing fran-chises and ousting the wrongful possessor, the fine being merely nominal.

In proceedings under the ancient writ of *quo war-ranto,* which were brought by the crown through its attorney-general, no great particularity in pleading was required, but the allegations employed were of the most general character.   The purpose of the writ was to call upon the defendant to show the authority by which he exercised a corporate franchise or assumed the duties of a public office, and the same was true as to informa-tions in the nature of *quo warranto.*   It was not the purpose of such writ of information to tender an issue of fact, but to call upon the defendant in the most gen-eral terms to set up the facts showing by what warrant or authority the privilege, franchise or office was held or exercised.   In such proceedings it was sufficient for the state to allege that the defendant intruded into a cer-tain office without authority of law, or that he usurped the powers, privileges and franchises of a corporation without legal warrant or authority so to do.   The de-fendant could not traverse an information of this char-acter by any plea to general issue; he must, by his plea, either disclaim or justify.   He must disclaim all right to the office or franchise and deny the usurpation, or he must specifically allege facts which show a legal right to discharge the duties of the office, or to exercise the privileges and franchises of a corporation, as the case might be.   The rules of pleading as thus announced still obtain except in states where by statute the pro-

ceedings have been assimilated to those in ordinary civil actions. 17 Ency. Pl. and Pr. 458; *State, ex rel.* v. *Messmore* (1861), 14 Wis. 125; *State, ex rel.* v. *Dahl* (1886), 65 Wis. 510, 518, 27 N. W. 343; *Boyer* v. *Teague* (1890), 106 N. C. 577, 618, 11 S. E. 665, 19 Am. St. 547.

In this state the early statutes provided for a proceeding by information in the nature of *quo warranto* (R. S. 1843 p. 937), but in 1852 the Civil Code 1. was adopted, by which a remedy by civil action was substituted for the information in the nature of *quo warranto* as it had previously existed. Chapter 44 of the Code on the subject of informations was re-enacted in 1881, and still remains in force without change. Section 816 of the Code of 1881 is as follows: "The information shall consist of a plain statement of the facts which constitute the ground of the proceeding, addressed to the court." §1190 Burns 1914, §1133 R. S. 1881. Section 818 of the Civil Code of 1881 is as follows: "Whenever an information is filed, a summons shall issue thereon; which shall be served and returned as in other actions. The defendant shall appear and answer, or suffer default, and subsequent proceedings be had as in other cases." §1192 Burns 1914, §1135 R. S. 1881. Section 55 of the Code of 1881 provides that the summons shall be issued by the clerk, under the seal of the court, and directed to the sheriff, and shall notify the defendant of the action commenced, the parties thereto and the court where pending. §317 Burns 1914, §314 R. S. 1881. Section 84 of the Code, being §338 R. S. 1881, §343 Burns 1914, provides: "The complaint shall contain—* * * A statement of the facts constituting the cause of action, in plain and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

Under the provisions of our Code the rules of pleading which apply in civil actions generally must be held to apply in actions of *quo warranto.* The section of the statute which requires that the information shall consist of a plain statement of the facts which constitute the ground of the proceeding must have been intended to require something more than the general statements and legal conclusions which were recognized as sufficient at common law. It is provided by statute in this state that a proceeding of *quo warranto* may be brought by a person on his own relation who claims an interest in the office, franchise or corporation that is the subject of the information. §1189 Burns 1914, §1132 R. S. 1881. In such a proceeding this court has held that an information is insufficient which does not state facts showing the interest of the relator. *State, ex rel.* v. *Bieler* (1882), 87 Ind. 320; *Reynolds* v. *State, ex rel.* (1878), 61 Ind. 392, 402; *State, ex rel.* v. *Home Brewing Co.* (1914), 182 Ind. 75, 105 N. E. 909.

It is also the rule that in proceedings to oust a corporation *de facto,* its existence as such being admitted or charged, the defects in the proceedings for its organization must be set out distinctly; and where a proceeding is brought to forfeit the franchise of a corporation for misuser or nonuser of its corporate powers, the facts constituting such misuser or nonuser must be specifically stated. 32 Cyc 1452; *State, ex rel.* v. *Portland, etc., Oil Co.* (1899), 153 Ind. 483, 53 N. E. 1089, 53 L. R. A. 413, 74 Am. St. 314; *State, ex rel.* v. *Buchanan* (1904), 37 Tex. Civ. App. 325, 83 S. W. 723.

By statute a conclusion stated in a pleading is deemed to be an allegation of every fact necessary to sustain such conclusion when the same is necessary to the sufficiency of the pleading. Acts 1913 p. 850, §343a Burns 1914. Under this act the facts nec-

essary to sustain the conclusion would be regarded as stated in testing the information by a demurrer, but a motion for an order requiring the pleading to be made more specific by stating the facts on which the conclusion is based should have been sustained. In this case, however, an answer was filed setting out the articles of incorporation, the certificate of the secretary of state and all of the steps taken and acts done by the defendants in their effort to incorporate the company whose right to exercise corporate franchises and to exist as a corporation is questioned by the state in this proceeding. The sufficiency of this answer was challenged by a demurrer which was sustained. The answer thus tendered an issue as to the validity and efficiency of steps taken for the incorporation of the company, and by the demurrer an issue of law was joined. If appellee had been required to make the information more specific by setting out the alleged defects in the proceedings and the defendants had demurred to the information as thus amended, the issue of law presented for decision could not have been materially different. If the state had been required to make the information more specific in response to appellants' motion, the issue would have been tendered by the information instead of the answer; but, as the pleadings stand, the issue was tendered by the answer. The denial of appellants' motion had the effect of shifting the burden of pleading the facts from the state to the defendants; but the court is of opinion that this was not so prejudicial to the defendants as to require a reversal. If appellants had stood on the ruling of the court on their motion to require the information to be made more specific, and, refusing to plead further, had suffered judgment to go and had appealed therefrom, a different question would be presented.

This brings us to a consideration of the second assignment of error, which challenges the ruling of the

trial court in sustaining the demurrer addressed to the answer. The memorandum filed with the demurrer was quite lengthy stating numerous particulars in which it was alleged the pleading was insufficient. Only those discussed on appeal will be considered.

The statute from which appellants derive authority to incorporate is chapter 165, Acts 1913. Acts 1913 p. 433, §8233 *et seq*. Burns 1914. Appellees 4. assent that the title of the act is not broad enough to cover all of the purposes for which corporations may be formed as designated in the body of the act, and that no corporation can be organized thereunder for the purposes so embodied in the act not covered by the title. The state has a right to attack the constitutionality of the statute under which appellants claim to be incorporated. *Attorney-General* v. *Perkins* (1889), 73 Mich. 303, 41 N. W. 426.

From an examination of the title in connection with the body of the act, the court is convinced that the position of appellee cannot be sustained. The first section of the act provides that any number of persons, not less than five, who may be landowners affected and interested in the construction, extension, changing, improvement, maintenance or repair of any levee, dyke, breakwater, dam, sewer, ditch, drain, diversion channel, creek, watercourse, pumping station, syphon, flood gate, *waste gate*, or in a combination of more than one of these objects or in *any work deemed to be necessary for, or to be an aid to, the protection, drainage, reclamation or improvement of any wet or overflowed land or lands subject to overflow*, or who may be interested in the extension, changing, improvement, maintenance or repair of any such work already constructed or in process of construction, may associate themselves together by written articles of association, etc. An examination of the title will show that it expresses as the sub-

ject of the act the construction, extension, changing, improvement, maintenance or repair by incorporated associations of all the various kinds of works for the drainage and reclamation of wet or overflowed lands as set out in the body of the act, except those indicated by italics in this opinion. The title also indicates that the act provides for the organization of such associations, prescribes their powers, provides for the making and collection of assessments for the cost and expenses of such improvements against lands benefited, and for all other matters properly connected therewith. The title of the act, as well as the body, indicates that the purpose of the act was to provide for the incor-

5.  poration of associations for the purpose of draining, protecting and improving wet and overflowed land by means of the construction of the various kinds of improvements mentioned. It is true that waste gates are not mentioned in the title, but the construction. of waste gates may be so intimately connected with other improvements expressly mentioned and so necessary to the efficacy of the work as a whole as to be properly connected therewith. The same may be said as to any work not expressly mentioned in the title which may be deemed necessary for an aid to the protection, drainage, reclamation or improvement of wet or overflowed lands. "Where the title relates to a subject which is broad enough to make it possible to comprehend different matters, which might or might not be included in the subject as means to a given end, the disposition of the courts is to solve doubtful questions as to the relation of a particular matter to the subject, in favor of the legislation." *State, ex rel.* v. *Board, etc.* (1905), 166 Ind. 162, 197, 76 N. E. 986, 997.

The case here presented is not one falling within the evils which the framers of the Constitution intended to guard against by the adoption of §19 of Art.

6. 4 of the Constitution. In the case of *Robinson* v. *Skipworth* (1864), 23 Ind. 311, 317, it is said: "The numerous attempts to procure improper legislation under false titles; the oft-repeated efforts, sometimes too successful, to incorporate into popular measures some foreign matter that could not otherwise become a law; and the blending of two or more totally distinct measures in one act, neither of which could succeed alone, make up the record that finally resulted in the incorporation into our fundamental law of the section referred to. It was not the design of the framers of our Constitution to put a clog upon fair and honest legislation; but to give ample scope for each act, to embrace all proper matters connected with one subject embraced in it." Considering the title in connection with the body of the act, it is apparent that no member of the legislature which passed it could have been misled as to its purpose. Nothing foreign to the purpose as expressed in the title is embodied in the act. It is apparent that the purpose of the act was to authorize the formation of associations to drain and reclaim wet or overflowed land, and to protect land against overflow by the construction of the various kinds of works of improvement designated, and others of a like nature adapted to the desired ends.

The articles of incorporation filed by appellants state as the objects of the association the construction of all of the various kinds of improvements enumerated 7. in §1 of the act. It is asserted that the statute authorizes the formation of a corporation for the construction of each of the several classes of improvements; but that a single corporation cannot be formed for the purpose of undertaking the construction of all the different kinds of works named in combination, even though such combination is employed in one project of reclamation of wet and overflowed land. Ap-

pellants base their contention on the wording of the first
section of the act in which the disjunctive conjunction
"or" is used to connect the words specifying the vari-
ous improvements authorized. If appellee's theory were
adopted and carried to its legitimate ends, it would lead
to an absurd result. It certainly could not have been
the purpose of the act to require the formation of sev-
eral corporations to construct the different parts of one
general project of reclamation, and to require separate
contracts for each class of work which combined to con-
stitute the improvement as a whole. On the other hand,
it is apparent that a corporation formed under the act
should have power to carry out a complete plan of rec-
lamation by the construction of any of the works of im-
provement mentioned or by any combination of such
works as might be required to accomplish the result de-
sired. The express language of §1 of the act indicates
such an intention. A corporation formed for the pur-
pose of constructing the several kinds of works named
as a part of one general improvement would not be
formed for the purpose of engaging in several separate
and distinct lines of business wholly disconnected,
wholly independent of each other and neither of which
was connected with or dependent on the other, as was
the case of *Williams* v. *Citizens', etc., Co.* (1900), 25
Ind. App. 351, 57 N. E. 581, and other cases cited. In
that case, as well as in the case of *Burke* v. *Mead*
(1902), 159 Ind. 252, 64 N. E. 880, the articles of as-
sociation were filed under the section of the statute
providing for the organization of voluntary associa-
tions for the purpose of conducting the several lines of
business and enterprise enumerated. These cases, as
well as all others cited in support of this contention of
appellee, can be easily distinguished from the case now
before the court.

A further objection is urged to the articles of incor-

poration set out in the answer on the ground that the signatures of Louis Klinger and Mary A. Jones

8. to the articles of incorporation were not acknowledged. The answer shows that at the time the articles of association were filed they were duly signed and acknowledged by each of the seven persons who were members at that time, and it expressly avers that Louise Klinger and Mary A. Jones were severally interested in the contemplated work by reason of being owners of land affected thereby, and that, subsequently to the original execution and acknowledgment of said articles and election of directors, they duly became members by signing the articles of association as provided by law. · Section 5 of the act provides that owners of land affected may become members by signing the articles of association after they have been filed and recorded. The fact that these signatures were not acknowledged does not invalidate the articles of association, and the objection made is without force.

The only other objection urged against the validity of the articles of association set out in the answer is that

9. they do not state the objects of the corporation with sufficient certainty, and that they contain no description of the work to be undertaken by the association. The statute requires that the articles shall state the objects of the association generally, and provides that it shall not be necessary to give the route, or a particular description of any of the work, or its location, but it shall be sufficient to state generally the scope and character of the proposed work and the counties included or in which the work will be done. In view of the general requirements of the act, the court holds that the statement of the objects for which the association was formed are sufficiently stated in the articles of association, and that no more particular description of the proposed work was required than that

stated therein. Section 12 of the act provides that, before causing any work to be commenced or any assessment to be made therefor, the board of directors shall cause a careful survey of the proposed work, and have plans and specifications prepared showing all of the details of the work proposed and the exact location of each item of said work by bearings and distances with reference to well-defined land corners or other permanent objects along the several lines of location so that a good intelligent description of the work will be had. Neither the act of 1852 (1 G. & H. 303), nor the act of 1869 (Acts 1869 p. 82) contained any such provision. The only provision made for a description of the proposed work by either of these acts was required. to be stated in the articles of incorporation. The cases of *West* v. *Bullskin, etc., Ditching Co.* (1869), 32 Ind. 138, and *O'Reiley* v. *Kankakee, etc., Draining Co.* (1869), 32 Ind. 169, were decided under the first one of these acts, and the other cases upon which appellee relies were decided under the second. *Skelton Creek Draining Co.* v. *Mauck* (1873), 43 Ind. 300; *Crawford* v. *Prairie Creek Ditching Assn.* (1873), 44 Ind. 361. In these cases it was held that the articles of association must contain such description of the work proposed as would enable a landowner to know whether his lands would be affected thereby, and to enable assessments to be made. It was the evident purpose of §12 of the act under consideration to make provision for such a definite description of the work to be accomplished as would obviate the necessity of any particular description in the articles of association. The cases to which reference has just been made cannot, therefore, be regarded as of authoritative force in this case. The articles of incorporation are not invalid or ineffective for any of the reasons presented.

All that has been said in this opinion has reference to

the original articles of association set out in the answer. The court being of the opinion that the original articles are sufficient to show the existence of a *de jure* corporation, it is not deemed necessary to consider the questions presented as to the effect of the amended articles set out in the answer.

The trial court erred in sustaining the demurrer to appellants' answer, and the judgment is accordingly reversed, with instructions to overrule such demurrer.

NOTE.—Reported in 119 N. E. 417. See under (2) 32 Cyc 1448, 1452; (4) 12 C. J. 760.