THE ATTORNEY GENERAL, EX REL. OTIS FULLER, V.
EUGENE PARSELL.

[See 98 Mich. 96.]

*State House of Correction—Removal of warden—Jurisdiction of
board of control—Quo warranto—Pleading.*

1. It was held in *Fuller v. Attorney General*, 98 Mich. 96, that
the Board of Control of the House of Correction and Reform-
atory at Ionia had jurisdiction, under Act No. 118, Laws of
1893, to pass upon the fitness of the warden for the office,
and its action in that regard, as set forth in that case, must
be regarded as final.

2. The provision of Act No. 118, Laws of 1893, which vests the
government and control of the House of Correction and
Reformatory at Ionia in a board of control, to consist of
three members, not more than two of whom shall be of the
same political party, to be appointed by the Governor by and
with the advice and consent of the Senate, was passed for a
salutary purpose, and violates no provision of the Constitution.

3. The members of the Board of Control of the House of Correc-
tion and Reformatory at Ionia are at least *de facto* officers,
and their title to their office cannot be attacked in *quo war-
ranto* proceedings instituted to test the title to the office of
warden of one appointed in place of a former warden, who
has been removed from office by the board of control under
the power conferred upon said board by the act cited.

4. The statute does not require notice of the order of removal to
be served upon the warden before the institution of such *quo
warranto* proceedings, and the fact that he was represented
by counsel when the order was made must be treated as
sufficient notice of said order.

5. Rejoinders to the replication to the plea to the information in
the *quo warranto* proceedings, charging a conspiracy upon
the part of the board of control to defame and oust the
respondent merely for political purposes, are scandalous and
impertinent, and will be stricken from the record; citing
*People v. Harding*, 53 Mich. 484.

Information in the nature of *quo warranto* to test the
title to the office of warden of the State House of Cor-
rection and Reformatory at Ionia. Relator moves to
strike rejoinders from the files. Argued March 6, 1894.

Decided March 20, 1894. The facts are stated in the opinion, and in 98 Mich. 96.

*Geer & Williams* and *William O. Webster,* for the motion.

*George E. & M. A. Nichols, contra.*

LONG, J. The Attorney General, by direction of this Court, in *Fuller v. Attorney General,* 98 Mich. 96, filed an information in the nature of *quo warranto* against the respondent. The information alleges, substantially, that the respondent has usurped, intruded into, and unlawfully holds the office of warden of the State House of Correction and Reformatory at Ionia, and has so unlawfully held the same for a long time, to wit, for 90 days last past, and still continues so unlawfully to hold and exercise the same. The information also alleges that Otis Fuller, the relator, is lawfully entitled to said office, having been appointed to the same on September 27, 1893, and on October 27 taken the oath of office, and filed it with the Auditor General, and that on the 7th day of November, 1893, he filed his approved bond with the Auditor General. The relator therefore prays for process against the respondent.

The respondent filed a plea in which he sets up that he lawfully holds said office by reason of his appointment thereto by the board of prison inspectors on the 7th day of October, 1891, for the period of four years therefrom, and that he has had during all of said time, and now has, the executive ability essential to the proper management of the officers and employés under his jurisdiction, and to maintain proper discipline in every department, and that up to this time he has continued faithfully to perform the duties of said office.

A replication was filed by the relator to this plea, in which it is denied that the respondent has the executive ability essential to the proper management of the officers

and employés of said State House of Correction and Reformatory at Ionia, and to maintain proper discipline in every department, and that the respondent, after he assumed the office, faithfully performed the duties thereof, as in said plea mentioned; and to this end the Attorney General says that the respondent was removed therefrom by the board of control on September 27, 1893, for the reason that the respondent did not have the executive ability essential to the proper management of the officers and employés of said reformatory, and did not maintain proper discipline in every department thereof, and did not faithfully perform the duties of said office. These facts are set up at great length in the replication, admitting the appointment of the respondent to the office by the board of prison inspectors, and setting forth the appointment by the Governor of a new board of control, the charges and specifications of charges made by the board against the respondent, their action thereon, and their order of removal of the respondent from the office, the substance of which is set out in *Fuller v. Attorney General.*

Six rejoinders were filed to this replication. By the first one the respondent alleges what he had before alleged in his plea,—that he did have the executive ability essential to the proper management of the officers and employés of said reformatory, and to maintain proper discipline in every department thereof, and that he did faithfully perform the duties of said office of warden as in said plea alleged; and of this he puts himself upon the country, and prays judgment.

In his second rejoinder he alleges, substantially, that after the passage of Act No. 118, Laws of 1893, the Governor, by virtue of said act, assumed to appoint the board of control, requiring of each member thereof the political test named and mentioned in section 2, and by reason thereof appointed two Republicans and one Democrat,—

the said Governor himself being *ex officio* member of said board, and also being a Republican,—and that the said Governor would not have appointed the Democratic member of said board had he been a Republican, or the Republican members had they been Democrats, but that he made said appointment of these parties upon said board because of their political belief and for political.reasons; and as to this the respondent puts himself upon the country.

In the third rejoinder he denies that proceedings were legally had and taken by said board, by which an investigation was ordered by adoption of the resolution set forth in relator's replication, and denies that said board was ever legally organized, or that notices of said hearing were duly served upon each member of said board of control, or that any findings or order of removal was duly given respondent, and also denies that on the 27th day of September, 1893, or at any other time, the said alleged board of control did then and there remove him from his said office, and denies that he has not been entitled to the rights, privileges, and emoluments belonging to said office since September 27, 1893; and as to this he puts himself upon the country.

In the fourth rejoinder he alleges that the Governor and the two Republican members of the board, together with the relator and other evil-disposed persons, whose names are as yet to him unknown, prior to the said 27th day of September, 1893, to wit, upon the 13th day of July, 1893, the 7th day of August, 1893, the 1st day of September, 1893, the 11th day of September, 1893, the 21st day of September, 1893, and on divers other days and times between the said 13th day of July and the said 27th day of September, 1893, did wickedly and maliciously, devising and intending to bring contempt, discredit, and dishonor on the administration of a public office, to wit, warden of said State House of Correction and Reformatory

at Ionia, then legally and lawfully held by this respondent, and to deprive him of then and there holding the office, and exercising the duties and receiving the benefits and emoluments thereof, and to deprive him of his good name, fame, and reputation, as well as unjustly to subject him to pains and penalties, conspire, combine, confederate, and agree together to vilify and defame this respondent, and did falsely and maliciously charge and accuse him of having been guilty of certain great corruption, neglect, official misconduct, and lack of ability in said office, and with having at divers times in his said office, and in the exercise of said duties, unlawfully and wantonly not practiced rigid economy in all matters pertaining to said prison, as provided by section 44, Act No. 118, Laws of 1893, and with not having the executive ability essential to the proper management of the officers and employés under his jurisdiction, and to enforce proper discipline in the prison, as provided by section 5 of said act, and with having paid out moneys not permitted or allowed by law, and with having employed persons without legal right so to do, and with not being in constant attendance at said prison, as required by section 7 of said act, to the great damage, disgrace, and infamy of this respondent, and to the great discredit and dishonor of the administration of said office; and the respondent alleges that the sole object of said combination, confederation, and unlawful and fraudulent agreements was for the purpose of ousting him from his said office of warden, without cause and without evidence, and installing the relator therein, for political purposes, and the private and personal interests of said John T. Rich (Governor), James T. Hurst, and Louis Kanitz (the Republican members of said board); and as to this he puts himself upon the country.

By the fifth rejoinder the respondent alleges his innocence of the charges brought against him by the board, and denies all the charges and specifications therein contained, and again alleges that his removal was brought about by the conspiracy between the Governor and the Republican members of the board, for political purposes, and to bring discredit upon him in the administration of the affairs of said office; and of this he puts himself upon the country.

The sixth rejoinder alleges that, in pursuance of said conspiracy, charges were preferred, and the order of removal made by the board, the parties thereto still knowing and understanding that the removal was not because of any act of the respondent in the discharge of his duties as warden, nor because of any dereliction of duty, nor because he was guilty of any of the charges so made, but for political purposes only; and as to this he puts himself upon the country. The sixth rejoinder also sets out that he was removed by the said board maliciously and arbitrarily, and for political purposes; and that the Republican members of the board conspired together to defame him and to bring him into disgrace and infamy.

The six rejoinders were filed in the cause, and the relator now comes, and moves to strike them from the files for the reasons:

*a*—That the first rejoinder is but a repetition of the allegation in respondent's plea, which was duly answered by the relator's replication.

*b*—That the issue tendered by the second rejoinder was determined against the respondent by this Court in *Fuller v. Attorney General, supra;* and, if the respondent desired to question further the constitutionality of the act under which the board was appointed, he should have demurred to relator's replication.

*c*—That the issue tendered by the third rejoinder was determined against the respondent in *Fuller v. Attorney General.*

*d*—That the fourth and sixth rejoinders contain scandalous and impertinent matter, and do not tender any material issue.

*e*—That the fifth rejoinder contains scandalous and impertinent matter, and the issues tendered were determined against the respondent in *Fuller v. Attorney General.*

The respondent contends, upon several grounds, that the motion to strike out the rejoinders cannot be sustained. He contends that the relator did not conclude his replication to the country, and, that being so, two ways are open for the respondent to meet the matter,—that he may add a *similiter*, or take a traverse after a traverse concluding to the country.

The plea set out the respondent's claim of title to the office, his appointment by the old board of prison inspectors, his executive ability to discharge the duties thereof, and his faithful discharge of such duties. But one replication was filed, which contained an admission of the appointment of the respondent to the office by the old board, and averred his removal therefrom by the new board. This replication set out in full the various charges and specifications for the removal of the respondent, the appearance of the respondent before the board, the contest there made, and the order of removal made by the board, and concluded with a verification.

1. The first rejoinder sets up no new matter, and is but a reiteration of the allegations contained in the plea. It is true that it is a traverse of the replication in that respect, and by it respondent puts himself upon the country; but that question was settled in *Fuller v. Attorney General, supra,* in which it was held that the board had jurisdiction to pass upon the respondent's fitness for the office, and we must regard its action as final. The rejoinder raises no question of fact for trial.

2. The issue made by the second rejoinder is one purely of law, and raises the question of the constitutionality of

Act No. 118, Laws of 1893. The constitutionality of the act was passed upon in *Fuller v. Attorney General,* and the act held valid. It is true the exact point made here was not presented in that case, but we see no reason for holding it unconstitutional for the reasons assigned. It is now contended that because the Governor, in making the appointments on a new board, acting under section 2 of the act, appointed from each political party, such appointments are void. That section provides that the board shall consist of three members, to be appointed by the Governor, and not more than two of such members so appointed shall be of the same political party. The Governor, by the same section, is made *ex officio* member of the board. This provision of the act, we think, was passed for a salutary purpose, and was within the province of the Legislature. We know of no provision of the Constitution of the State which it violates. The Governor was bound by this section to appoint each member of the board, and, in making the selection, to choose no more than two from the same political party. This provision was carried out, as admitted by the respondent. It is true that the appointments may have been made for political purposes, and because of the political beliefs of the parties appointed; but this could not make the appointments void, and no issue of fact could be framed thereon. But, if this were not so, the title to their office cannot be attacked here. They are at least *de facto* officers. *State v. Carroll,* 38 Conn. 449; *State v. Alling,* 12 Ohio, 16; *Masterson v. Matthews,* 60 Ala. 260.

3. The third rejoinder has been substantially stated. It is contended by counsel for respondent that four questions of fact are raised by it:

*a*—Whether notice was ever served upon the members of the board as required by law.

*b*—Whether an order was ever passed, as set forth in the replication, for removal of respondent.

*c*—Whether any findings or order of removal was duly given to the respondent.

*d*—Whether on the 27th of September, 1893, the respondent was removed from the office of warden by the board of control.

The foundation of the relator's action is the action of the board in removing the respondent, and appointing the relator to the office in question. It is therefore contended by the respondent that the board being an inferior body, clothed only with certain powers, when its judgment is relied upon, even in a collateral proceeding, the facts necessary to give the board jurisdiction must be both pleaded and proved. This is unquestionably true. But is the question of the board's jurisdiction here put in issue? It had power, under the statute, to hear and determine the questions raised, and to remove from office if the charges were proved. *Fuller v. Attorney General, supra.* That the board met, as stated in the replication, is not denied by the rejoinder. The rejoinder is peculiar in its pleadings. It denies that proceedings were legally had and taken by said board of control, by which an investigation was ordered by the adoption of the resolution set forth in the replication. The resolution is set forth in the replication, and this is not put at issue, except that it is said that the proceedings were not legally taken. What was lacking to make them legal is not pointed out. It denies, also, that the board was legally organized. Why not legally organized is not stated. It denies that notices of said hearing were served upon each member of the board upon certain dates mentioned; but it appears, and is not denied, that the board met,—all members being present, and the respondent being present. A full investigation was had, and the charges found to be true, whereupon an order of removal was made.

It denies that any findings or order of removal was duly given to respondent; and yet it appears, and is not denied by the rejoinder, that the proceedings for removal were had upon the 27th day of September, 1893, and that all parties were · present. Respondent was represented by counsel, and the whole question was then and there litigated and determined. The replication states that the cause was argued by counsel for respondent, and the order of removal then and there made. The proceedings were had at the office of the warden at Ionia, and the order was made then and there. It appears, therefore, affirmatively, that the determination and decision of the board was then and there made. It is true, it appears by the replication that after the decision was made the proceedings were duly recorded, and· notice thereof served upon the respondent, and this fact is denied by the rejoinder; but whether the notice of removal, and the order which was entered, · were served upon the respondent or not, cannot now be taken advantage of. That he was in court by his attorney when the order was made is not denied. The whole question sought to be raised in this respect seems to be an afterthought, at the most, as it appears in *Fuller v. Attorney General* that, when the Attorney General was petitioned to file the information, the respondent here put in his answer to that application, which was returned into this Court, and in which no such question was raised; but, on the contrary, the answer set out the order made by the board, and claimed that it was invalid for several reasons, but not for those now given. The fact that the respondent was in court by his counsel must be treated as sufficient notice. There is no provision of the statute which requires such notice to be served before proceedings can be taken by *quo warranto*. What the law aims at is that no one shall be proceeded against, and

mulcted in damages or costs, without an opportunity to comply with the order.

The questions here considered have been adjudicated by the tribunal established by the Legislature for that purpose. The board is clothed with power to act, and had jurisdiction over the subject-matter; and the warden appeared, submitted to the jurisdiction, and made his defense. In a collateral proceeding, the judgment of the board cannot be attacked, except for jurisdictional defects. *O'Connor v. Boylan*, 49 Mich. 209; *Gorrill v. Whittier*, 3 N. H. 265; *Porter v. Gile*, 47 Vt. 620; *Hendrick v. Whittemore*, 105 Mass. 23. The rejoinder raised no new question of fact for trial.

The fourth, fifth, and sixth rejoinders raise no new questions of fact for trial. They are attacks upon the board, made in a collateral proceeding, and can have no weight here. The board was sitting in pursuance of the statute, and clothed with all the power it attempted to exercise. As well might similar attacks in a collateral proceeding be made upon the judgments of any other court having jurisdiction of the person and the subject-matter in controversy. It will not do to say that this was a tribunal established by the statute, not possessed of common-law powers, and therefore all its acts and proceedings are open to attack collaterally. In a sense, it was acting judicially, and its judgment cannot be vacated and set aside by an attempt to indict the tribunal rendering the judgment. The motives of the board are not open for review here. *Fowler v. Brooks*, 64 N. H. 423; *Phillips v. Eyre*, L. R. 6 Q. B. 1; *Trawick v. Trawick*, 67 Ala. 271.

It is true that a party relying upon the judgment of a court of inferior or statutory jurisdiction is bound to set forth in his plea all the facts essential to give such court jurisdiction, and is bound to prove those facts affirmatively.

In this case these facts do appear affirmatively, and are not in dispute.

It is contended, however, by respondent's counsel, that this Court may, notwithstanding the complete jurisdiction of the board over the person and the subject-matter of the controversy, inquire into the facts which the board had before it, and determine whether the facts warranted the removal. Several cases are cited by counsel to this effect, but in all the cases cited the proceedings were by *certiorari* to review the action of a board, or some other inferior tribunal.

The fourth, fifth, and sixth rejoinders are scandalous and impertinent, and will be stricken from the record. They have no place here. *People v. Harding*, 53 Mich. 484.

The first, second, and third rejoinders will be treated as demurrers to the replication, and will stand. The cause will be placed on the calendar for hearing on these demurrers the first day of the next term of this Court.

McGRATH, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.