NORTH *v.* CITY OF BATTLE CREEK.

1. MUNICIPAL CORPORATIONS—CITY ATTORNEY — PUBLIC OFFICERS—SALARY.
> Title to a public office cannot ordinarily be questioned collaterally in an action for the salary or emoluments of the office.

2. SAME—DEFENSES—DE FACTO OFFICIAL.
> The payment of salary to a *de facto* officer having legal *indicia* of title operates as a defense to a claim by the *de jure* officer against a public corporation.

3. SAME.
> Where a city adopted a charter under the new Constitution which by express terms continued the officers of the city in office, depriving the mayor of the power which he had under the pre-existing charter to appoint the city attorney, the office of city attorney was continued as it had theretofore existed, and from the adoption of the new charter was governed thereby, or, at least, from the date when it was officially declared to have been adopted.

4. SAME—BATTLE CREEK CHARTER—DE FACTO OFFICER.
> In an action by a city attorney for the salary of his office, evidence that the person who usurped or undertook to

perform its duties had no official title and no apparent right to perform the functions of city attorney, and that he had been appointed by the mayor, who was deprived by the terms of the new charter of the power of appointment, entitled the plaintiff to recover judgment for the amount of his salary.

Error to Calhoun; Cross, J.   Submitted January 15, 1915.   (Docket No. 106.)   Decided April 19, 1915.

Assumpsit by Walter H. North, as executor of the estate of Duane C. Salisbury, deceased, against the city of Battle Creek for salary of decedent as city attorney.   Judgment for plaintiff.   Defendant brings error.   Affirmed.

*Howard W. Cavanagh,* for appellant.

*N. A. Cobb* (*James Cleary,* of counsel), for appellee.

OSTRANDER, J.   At the election held in the city of Battle Creek April 7, 1913, there were elected a mayor and five aldermen, who, with five aldermen holding over, constituted the common council.   At the same election, a new city charter was submitted to and adopted by the electors.   It is apparent, from certain provisions of the new charter, that it was contemplated it might or might not be adopted.   If not adopted, municipal affairs were to run on under the old charter; if adopted, such provision was made that there should be no municipal or official interim.   If adopted, a commission was to be elected, at a primary and municipal charter election to be called immediately after the common council had declared that the same was adopted.   One of its provisions was that:

"This charter, when approved by the governor and the electors of the city of Battle Creek as provided
185 Mich.—38.

by Act No. 279 of the Session Laws of 1909, shall be deemed a public act. * * * "

It also provided that after the adoption of the charter, and until the commission had been elected, qualified, and organized as a commission, the common council, board of public works, police commission, and the officers and employees under them should continue to exercise and perform the duties and have the powers given under the charter which was superseded.

Under the old charter the mayor made certain appointments to office, among them to the office of city attorney; his power and duty in this respect being to appoint on the third Monday in April, the person appointed to hold office for one year and until his successor was appointed and had qualified. This power had been exercised in 1911 and in 1912, and when the new charter was adopted Duane C. Salisbury was the incumbent of the office of city attorney, to which he was appointed in 1911, and again in 1912. According to the new charter, all appointive officers theretofore appointed by the mayor and common council, whose appointment was made "for a definite or indefinite term," and whose term had not expired "when this charter shall go into effect," were to continue in office "under this charter" until successors were appointed by the commission, and at the salary paid them "when this charter went into effect," "at which time their term of office shall expire."

The common council declared on April 10, 1913, that the new charter had been adopted, on that day a copy of the charter was filed with the county clerk, and on April 11, 1913, a copy was filed with the secretary of State. The common council did not direct the filing of these copies, and it seems that the city attorney, Salisbury, was responsible for this action. Later on, by order of the council, other copies were also so filed. The newly elected mayor on the third

Monday in April (April 21st) appointed Howard W. Cavanagh city attorney, and he thereafter claimed to hold the office; no new or other appointment having been made by the commission thereafter elected. Mr. Salisbury advised the common council, and the commission, in effect, that he was city attorney, and demanded recognition as such and the emoluments of the office. Mr. Cavanagh appears to have been recognized as city attorney and to have drawn the salary of the office. No proceeding was instituted by either claimant to determine who held the office by right. Mr. Salisbury died November 26, 1913, and the executor of his estate brought this action for the salary of the office, and recovered. A special question was submitted to the jury, which was: "Did Mr. Salisbury ever abandon the office of city attorney?" And the jury was instructed that, if he did not, if the question was negatively answered, he was entitled to the salary.

A large number of errors are assigned, but the meritorious questions raised by them are two only, and they are: *First,* whether the suit can be maintained at all; *second,* whether, after the adoption of the new charter, it was under and by virtue of its provisions that municipal affairs were conducted.

1. It is the general rule that the title of an incumbent of a public office cannot be collaterally questioned, nor be tried in an action by the incumbent or by any one else for the salary of the office. 28 Cyc. p. 410; *Carlisle* v. *City of Saginaw,* 84 Mich. 134 (47 N. W. 444); *Attorney General* v. *Parsell,* 99 Mich. 381 (58 N. W. 335); *Matter of Corrigan,* 37 Mich. 66; *Druse* v. *Wheeler,* 22 Mich. 439; *Grondin* v. *Logan,* 88 Mich. 247 (50 N. W. 130); *Tower* v. *Welker,* 93 Mich. 332 (53 N. W. 527); *Moiles* v. *Watson,* 60 Mich. 415 (27 N. W. 553); *Hallgren* v. *Campbell,* 82 Mich. 255 (46 N. W. 381, 9 L. R. A. 408, 21 Am. St. Rep. 557); 24 Cyc. p. 416. See, also, *Blain*

v. *Circuit Judge,* 145 Mich. 59 (108 N. W. 440). And it has been held that the payment of the official salary to a *de facto* officer having the legal *indicia* of title is a defense to a claim against a public corporation or its disbursing officer made by the *de jure* officer. *Auditors of Wayne Co.* v. *Benoit,* 20 Mich. 176 (4 Am. Rep. 382) ; *Scott* v. *Crump,* 106 Mich. 288 (64 N. W. 1, 58 Am. St. Rep. 478). As I shall point out, Mr. Cavanagh did not perform the duties of the office with apparent right, nor have the legal *indicia* of title to the office.

2. Nothing can be plainer than that, after the adoption of the new charter by the electors, it then, by its terms, *ex proprio vigore,* continued in office all officers of the city, elective and appointive. Their duties, powers, and salaries were described and defined in the old charter; but it was by virtue of the new charter alone that any person held office and performed official duties. It extended the terms of some appointive officers, and shortened the terms of some elective officers. It preserved, and was intended to preserve, the official *status quo* as of the time when by official determination (if not earlier) the new charter was adopted. Under the old charter the mayor had power to appoint a city attorney. Of this power the new charter in unmistakable terms divested him. It is said in argument, in effect, .that the new charter could speak only from the time it took effect —became effective—which is true, and that it became effective after April 21st, the day when Cavanagh was appointed, which is plainly not true. The old charter was superseded by the adoption of the new one, and, if not from the day of its adoption by the electors, at least from the day when the adoption was officially declared, it was the governing law of the city.

In this view, it is not important to discuss the effect of failure of Salisbury to file an oath of office after

his last appointment to office, the effect of the first or second filing of copies of the charter, nor the effect of payment of the salary of the office to Mr. Cavanagh. He shows no apparent right to the office; the entire situation being governed by the plain language of the city charter, in violation of which he assumed to act.

The judgment is affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.