## HUFFMAN v. STATE OF INDIANA.

[No. 22,619.  Filed June 25, 1915.  Rehearing denied November 5, 1915.]

1. CRIMINAL LAW. — *Plea in Abatement.* — *Scandalous Matter.* — *Striking Out Plea.*—Where defendant in a criminal prosecution filed a plea in abatement embracing 123 closely typewritten pages, composed almost entirely of immaterial, redundant and impertinent matter, much of which was scandalous, and the material facts of which could have been stated within the scope of two or three typewritten pages, there was no error in sustaining a motion to strike out the whole pleading.  pp. 700, 702.
2. PLEADING.—*Motion to Strike.*—*Scandalous Matter.*—While it is the general rule that a motion to strike out improper and scandalous matter should be directed only to the allegations containing the improper matter, where such allegations can be eliminated leaving such a connected statement of material facts as constitutes a sufficient pleading, or which is capable of being so amended as to make it sufficient, a different rule prevails where the scandalous and impertinent matter predominates and

is so mingled and blended with that which is pertinent and proper as to render the separation unpracticable or extremely difficult, and in such case the entire pleading may be struck from the files. p. 701.

3. PLEADING.—*Scandalous Matter.*—Pertinent allegations, even if false, can not be scandalous; but if they are impertinent and reflect on character or contain criminations, they are scandalous whether true or false. p. 702.

4. ELECTIONS.— *Offenses.— Removal of Ballots.— Indictment.*— An indictment charging that defendant was the election inspector for a certain precinct and as such had in his possession a number of ballots to be used in such precinct for voting at the election, and that while having such ballots in his possession and custody he unlawfully, feloniously and knowingly permitted a certain number of such ballots to be unlawfully and feloniously taken and removed from his possession and custody as election official, to which taking and removing he then and there unlawfully, feloniously and knowingly consented, sufficiently charged a violation of §6914 Burns 1914, Acts 1899 p. 157, §32. p. 702.

5. INDICTMENT.—*Sufficiency to Sustain Conviction.—Statutory Offense.*—An indictment which properly charges an offense under a statute of the State is sufficient to sustain a conviction under such statute, although the prosecuting attorney may have supposed that the offense was covered by a different statute. p. 703.

6. INDICTMENT.—*Venue.—Judicial Notice.*—An indictment charging that the offense was committed in the city of Terre Haute, Indiana, sufficiently stated the venue, and the court takes judicial notice that the city of Terre Haute is in Vigo County. p. 703.

7. INDICTMENT.—*Requisites.—Signature.*—An indictment will not be deemed defective on appeal because signed by a special prosecuting attorney who had the matter in hand, instead of by the regularly elected prosecuting attorney, since the appointment of a special prosecuting attorney is authorized by statute when the prosecuting attorney fails to attend the court, and such appointee during the absence of the prosecuting attorney possesses full power to perform all his duties, and in the absence of any showing to the contrary it must be presumed that the appointment was in compliance with the statute. p. 703.

From Vigo Circuit Court; *Felix Blankenbaker*, Special Judge.

Prosecution by the State of Indiana against William Huffman. From a judgment of conviction, the defendant appeals. *Affirmed.*

*Albert J. Kelley, Louis D. Leveque* and *Hamill, Hickey & Evans,* for appellant.

*Thomas M. Honan,* Attorney-General, *Thomas H. Branaman* and *Joseph Roach,* for the State.

LAIRY, J.—Appellant was prosecuted and convicted in the Vigo Circuit Court upon an indictment returned to such court on January 24, 1914. Before pleading generally to the indictment appellant filed a plea in abatement, which, upon motion of the State, was stricken from the files of the court. Appellant then filed a motion to quash the indictment which was overruled. The exceptions of appellant to these rulings raise the only questions which are presented on appeal.

The plea in abatement thus filed, as shown by the record, covered 123 typewritten pages. It is not practicable within the scope of this opinion to give even the substance of

1. the averments contained therein. An attempt to do so would be a waste of time on the part of the court and the result would be of no value to anyone. The pleading, if it may be properly so designated, is composed almost entirely of immaterial, redundant and impertinent matter, much of which is scandalous, reflecting as it does on the motives which influenced the action of the trial court and also containing charges of crime and misconduct on the part of persons in no way connected with the case. If the improper matter were eliminated the material facts might be concisely stated within the scope of two or three typewritten pages. The trial court could not permit these pleadings to stand in such a form, and in order to purge the files it was required to either strike it out as a whole or to separate the "two grains of wheat" from the "two bushels of chaff" and to eliminate the improper and objectionable matter. If the motion to strike had been directed to only such allegations as contain improper and objectionable matter, there could have been no doubt as to the propriety of sustaining it, but by sustaining the motion to strike out the whole pleading, the

proper and material allegations were carried out along with those that are improper and immaterial.

Appellant asserts that it is error to strike out a pleading as a whole, where it contains proper and material allegations even though it contains improper and scandalous matter. It is the general rule that the motion to strike out under such circumstances should be directed only to the allegations which contain the improper matters, especially where the allegations can be eliminated leaving such a connected statement of material facts as constitutes a sufficient pleading or which is capable of being so amended as to make it sufficient. A different rule prevails, however, with reference to pleadings in which the scandalous and impertinent matter predominates as it does in the pleading under consideration, and where it is so mingled and blended with that which is pertinent and proper as to render the separation impracticable or extremely difficult. In such a case the entire pleading may be struck from the files. *Van Etten* v. *Butt* (1891), 32 Neb. 285, 49 N. W. 365; *People* v. *Albany, etc., R. Co.* (1870), 57 Barb. 204; *People* v. *Church* (1870), 2 Lans. (N. Y.) 459; *Ringo* v. *New Farmers Bank* (1897), 101 Ky. 91, 39 S. W. 701; *Price* v. *Tyson* (1831), 3 Bland Ch. 392, 400, 22 Am. Dec. 279; *Attorney General* v. *Parsell* (1894), 99 Mich. 381, 58 N. W. 335; *Armstrong* v. *Phillips* (1891), 60 Hun 243, 14 N. Y. Supp. 582; *Mitchell* v. *Brown* (1883), 88 N. C. 156. In the case of *Ringo* v. *New Farmers Bank, supra*, the court struck out an answer as a whole because it contained scandalous matter, but granted defendant leave to file an answer eliminating the objectionable averments. If, after appellant's answer in abatement was struck out, he had offered to file a proper answer, the court, no doubt, would have given him leave to do so. In the case of *Mitchell* v. *Brown, supra*, the court, in speaking of a replication containing improper language, said, "The replication ought not to have been received with this offensive language, or when discovered, should have been

removed from the files until reformed and made consistent with the rules of pleading as prescribed in the code.''

Allegations which are pertinent can not be scandalous, but if they are impertinent and reflect on character or contain criminations they are scandalous whether true 3. or false. If that which is stated is material to the issue it may be false but it can not be scandalous. *Ex parte Simpson* (1809), 15 Ves. Jr. 476. On the other hand, the fact that allegations of this character be true will not prevent them from being scandalous if they are not material to the issue. *Pearse* v. *Pearse* (1873), 29 L. T. (N. S.) 453.

A court is bound to purge its records of scandal and where a pleading or other paper filed in court is of such a character that the scandalous portion can not be expunged 1. without affecting the integrity and meaning of the remaining portion it may be stricken out as a whole. The answer in abatement was of such a character as to justify the ruling made and the trial court did not err therein.

The remaining questions presented relate to the sufficiency of the indictment. It appears from the indictment that on November 3, 1913, appellant was an election inspector 4. in one of the voting precincts of the city of Terre Haute for an election which was to be held on the following day; and as such election inspector he had in his possession a number of ballots which were to be used in such precinct for voting at such election. It is charged that appellant, then and there while having such ballots in his possession and custody, unlawfully, feloniously and knowingly permitted a large number of such ballots, to wit, about 150, to be then and there unlawfully and feloniously taken and removed from his possession and custody as election official, to which taking and removing, he, the said Huffman, as inspector then and there unlawfully, feloniously and knowingly consented. The foregoing statement of the contents of the indictment is sufficient to disclose the nature of the

objection urged against it, and that is the only purpose of the statement.

On behalf of appellant it is asserted that the charge in the indictment is not sufficient to show that appellant "gave or delivered" any of such ballots to any person not entitled to receive them as provided in §6936 Burns 1914, Acts 1899 p. 157, §54. There may be serious doubts as to whether the charge in the indictment is sufficient to show that he "gave or delivered" any of the ballots so as to make him criminally liable under the section heretofore mentioned, but this we need not decide. The charge contained in the indictment is clearly sufficient to show that he permitted such ballots to be removed and taken out of his custody and that he consented to such removal. Such a charge is sufficient under another section of our statute. §6914 Burns 1914, Acts 1899 p. 157, §32.

An indictment which properly charges an offense under a statute of the State is sufficient to sustain a conviction under such statute, although the prosecuting attorney may 5. have supposed that the offense was covered by a different statute. *State* v. *Vandenburg* (1900), 159 Mo. 230, 236, 60 S. W. 79; *Williams* v. *United States* (1897), 168 U. S. 382, 18 Sup. Ct. 92, 42 L. Ed. 509.

The venue is sufficiently stated in the indictment. It is charged that the acts constituting the offense were committed in the city of Terre Haute, Indiana, and the 6. court takes judicial notice that the city of Terre Haute is in Vigo County. *Indianapolis, etc., R. Co.* v. *Lyon* (1874), 48 Ind. 119; *Volker* v. *State* (1912), 177 Ind. 159, 97 N. E. 422.

The indictment is not defective because it is signed by the special prosecuting attorney appointed by the court instead of by the prosecuting attorney who was duly elected 7. and qualified. In case a prosecuting attorney fails to attend any court of his circuit, the statute expressly authorizes the court to appoint an attorney to discharge

the duties of such prosecuting attorney. §9407 Burns 1914, §5865 R. S. 1881. The attorney so appointed by the court during the absence of the prosecuting attorney possesses full power to perform all of the duties of such office. *Choen* v. *State* (1882), 85 Ind. 209. The record in this case does not show that the special prosecuting attorney who signed the indictment was not appointed by the court in compliance with the statute. The presumption is in favor of the regularity of the proceedings of the trial court.

After the motion to quash was overruled appellant entered a plea of not guilty and a trial resulted in his conviction. The record does not show that he filed any motion for a new trial, and no error is assigned on appeal presenting any action or ruling of the court at or during the trial which is claimed to be prejudicial to appellant. The objections relating to the proceedings which preceded the plea to the merits are technical rather than substantial. Judgment affirmed.

Spencer, C. J., dissents.

## DISSENTING OPINION.

SPENCER, C. J.—I cannot get my reasoning processes to concur with the majority opinion herein and, while I recognize the futility of a dissenting opinion as being ordinarily only a protest or a specific method of recording a minority vote, yet to my mind the one· vital question presented by this record and but slightly touched on in the majority opinion, is so fraught with possibilities of great danger to the personal liberty of the citizens of the State, that I deem it my duty to express my views thereon.

At the threshold of this case we are met with the fact that it is a criminal prosecution and has to do with the liberty of a citizen. A plea in abatement has been filed which covers 123 closely typewritten pages. It contains "immaterial, redundant and impertinent matter, much of which is scandalous". Its "material facts might be concisely stated within the scope of two or three typewritten pages". It

contains "two grains of wheat" and "two bushels of chaff".
It also contains serious charges of crime and misconduct on
the part of those connected with the case. One of the
"grains of wheat" is found in the allegations that there
was a duly elected, qualified and acting prosecuting attor-
ney for the 43d judicial circuit of the State of Indiana;
that he had been elected by the people; that it was his duty
to prosecute the pleas of the State of Indiana within and
for the county of Vigo in said judicial circuit; that he and
his regularly appointed deputies were present and in attend-
ance at the term of court at which the indictment was re-
turned; that he was able, willing and ready to appear before
the new grand jury empaneled by the court and to assist
in conducting its investigations; that the court, of its own
motion, appointed as special prosecutor to appear before
such grand jury one Joseph Roach and further instructed
the grand jury not to permit any person other than said
Roach to appear before it on behalf of the State at any time
when it was hearing evidence in relation to election frauds
but that the regularly elected prosecuting attorney might
appear before it to present any other matter which might
properly come before it for investigation; that the appoint-
ment of such special prosecutor was made over the objection
and protest of the duly elected and acting prosecuting at-
torney; that the latter was at all times ready, willing and
competent to conduct examinations and to perform his du-
ties as such elected officer; that he was in no way disqualified
from performing such duties and was at no time absent from
his circuit; that the trial court suspended and superseded
such duly elected prosecutor without authority of law so
to do.

Another of the "grains of wheat" contained in the veri-
fied plea, without stating it in detail, was a full and com-
plete charge of misconduct on the part of the court, clerk
and jury commissioners in selecting and drawing the grand

jurors who were subsequently empaneled and acted as such under the advice and direction of said special prosecuting attorney and who returned the indictment herein.   Such charge of misconduct was one of collusion and corruption in the selection and empaneling of the so-called new grand jury.   Either of the above ''grains of wheat'', when called to the attention of an uncorrupted tribunal, should immediately arouse the inquiry of the court to the extent that every effort should be made to ascertain the truth or falsity of the charges made, notwithstanding that the grains may have been mingled with any number of ''bushels of chaff''.   The pleading was stricken out as a whole and the opportunity of the court to determine the truth or falsity of the grave charges which it contained was thus destroyed.   The majority opinion herein states it to be ''the general rule that the motion to strike out under such circumstances should be directed only to the allegations which contain the improper matters''.   Had such general rule prevailed in this case it can be readily seen that the court would have the ''grains of wheat'' as grist for its mill of truth.   It should be kept in mind that each case cited in the majority opinion to the effect that the entire pleading may be stricken from the files when the scandalous and impertinent matter predominates and is so blended and intermingled with the pertinent matter as to render its separation impracticable or difficult, is a civil case and in none of them was the liberty of a citizen involved.   It is also correct to state that in a proper case ''a court is bound to purge its records of scandal'', but when matter that otherwise would be scandalous is material and pertinent to the issue it can not be scandalous.   It seems to the writer that a better method of purging the records of scandalous matter would be to cite the pleader of such matter and his attorney to show cause why they should not be adjudged in contempt of court and if so found, be punished therefor, and the objectionable matter expunged, rather than to strike from the files in its entirety a pleading

which, it is conceded, contains some "grains of wheat". That which a court should seek is *the truth* and if, in such search, things unclean and unwholesome are found, that affords no good reason for abandoning the search and thereby permitting injustice to be done to the extent of depriving a citizen of his liberty. In the case of *Ringo* v. *New Farmers Bank* (1897), 101 Ky. 91, 39 S. W. 701, it is in substance said, the court struck out an answer as a whole because it contained slanderous matter but granted defendant leave to file an answer eliminating the objectionable averments. This principle should have been applied in the instant case but from the matters alleged in the plea in abatement it will hardly do to presume that the trial court would have granted leave to refile. The reasoning of the majority opinion leads to the presumption that the defendant would have been permitted to file and refile successive pleas in abatement until their tenor, tone and odor pleased the peculiar olfactory nerves of the trial judge; and should he fail in this, then whatever good and sufficient reasons may exist for abating the action must be cast aside. In other words, if counsel representing a defendant charged with a felony employs language and makes averments that are scandalous in connection with allegations which are material and pertinent and contain good "grains of wheat", his client, by presumption and discretion of the court, is to be deprived of his right to have the truth ascertained. To the mind of the writer such can not be the law.

Had the court required that the scandalous matter or chaff be stricken out, leaving the grains of wheat, viz., the appointment on the court's own motion of a special prosecuting attorney, thereby suspending the regularly elected officer, and the charge of corruption in the selection and empaneling of the grand jury, what would be the law of the case?

The only direct authority cited by appellee in support of the idea that circuit courts have an implied discretionary

power to meet emergencies which may be assumed to exist and may exercise such power by the appointment of a special prosecutor when necessary in the judgment of the court to secure the proper administration of justice, is the case of *Dukes* v. *State* (1858), 11 Ind. 557, 563, 71 Am. Dec. 370, in which the court said: ''we think the court possesses an inherent power to appoint one of the attorneys of the court, when necessary to prevent a failure of justice, to conduct the prosecution of a criminal.'' When considered with the pertinent averments of the plea in abatement filed in this case, the above declaration is so remote from the true logic of the situation here presented as to require but little reasoning to make that fact apparent.

As is said in *State ex rel.* v. *Home Brewing Co.* (1914), 182 Ind. 75, 105 N. E. 909: ''Prosecuting attorneys are the historic law officers of the State. As early as 1824 they were appointed by the Governor and the duty placed on them 'to prosecute all pleas, plaints, indictments, presentments and suits of every description on the part of the State.' R. S. 1824 p. 127, §10. In 1831 their duties as fixed by statutory law were not materially different, but they were chosen by joint ballot of the senate and house of representatives. R. S. 1831 p. 88, §1. Thus the law continued until 1843 when provision was made for their election by the people. R. S. 1843 p. 100, §28, p. 1020, §1. By §11, Art. 7, of the present Constitution, they were made elective constitutional officers.''

Section 11, Art. 7, of the Constitution provides that ''There shall be elected in each judicial circuit by the voters thereof, a prosecuting attorney, who shall hold his office for two years.'' Section 9403 Burns 1914, §5861 R. S. 1881, provides that ''At the general election in the year 1852, and every second year thereafter, there shall be elected in each judicial circuit, a prosecuting attorney, who shall prosecute the pleas of the state in the circuit courts of such circuit.'' Section 9406 Burns 1914, §5864 R. S. 1881, further provides

that "Such prosecuting attorneys, within their respective jurisdictions, shall conduct all prosecutions for felonies or misdemeanors and all suits on forfeited recognizances; resist applications for changing names, protect the interests of all persons of unsound mind and superintend, on behalf of counties or any of the trust funds, all suits in which the same may be interested or involved, and shall perform all other duties required by law." Under the provisions of §1980 Burns 1914, Acts 1905 p. 584, §109, "The prosecuting attorney or his deputy shall be allowed at all times to appear before the grand jury, for the purpose of giving information relative to any matter cognizable by it, or advice upon any legal matter when required; and he may interrogate witnesses before the grand jury, when the jury or he deem it necessary, but no prosecuting attorney, officer or person shall be present with the grand jury during the expression of their opinions or in giving their votes upon any matter before them." Section 12, Art. 7, of the Constitution provides that "Any judge or prosecuting attorney who shall have been convicted of corruption or other high crime, may, on information in the name of the state, be removed from office by the supreme court, or in such other manner as may be prescribed by law."

Judges of the circuit courts and prosecuting attorneys are creatures of the Constitution, neither dependent or interdependent on the other but each complete within the sphere of their powers and duties, and it will not do to say that one constitutional public officer has properly performed his duty by indulging the presumption against another such officer that he has been or will be derelict in the performance of his duties. As is said in 22 Am. and Eng. Ency. Law (2d ed.) 1270, "the presumption that one officer has performed his duty cannot be invoked for the purpose of putting another officer in default, as the presumption of the performance of official duty applies equally in favor of each." See, also, cases cited in support of above statement. When

a public officer is present on the scene of his official duties, is able to discharge such duties and is not prejudiced, as the plea in abatement here asserts, the law affirmatively presumes that such officer will perform such duties, and in the absence of any allegations to the contrary that legal presumption prevails. To put the proposition in another form is to enquire whether a circuit court in this State is clothed with power and authority on its own initiative to suspend the prosecuting attorney of the circuit from his office or to supersede him by appointing a special prosecuting attorney in a particular case. If so, can not the judge of the circuit court remove and appoint attorneys in civil cases with as much reason? I think it clear that the judge of a circuit court has no right to prosecute either civil or criminal cases and is under no duty so to do. The true sphere of his duty is to adjudge and administer the law impartially as to all parties before the court, leaving the conduct of all causes, civil and criminal alike, in the hands of those whose duty it is under the law to conduct them. To use the exact language of this court in *Tull* v. *State, ex rel.* (1884), 99 Ind. 238, 240: "The court having jurisdiction of felonies is not organized to acquit or to convict persons accused of crime, but to see that, if innocent, they have safe deliverance, and, if guilty, that they be justly punished."

By the appointment of the special prosecutor as herein alleged the regular prosecuting attorney was suspended from the office to which he had been elected by the people. A suspension from office has been defined to be "an interruption in the exercise of the officer's duty"; "a deprivation of the office for a time". The word "suspend" has been defined "to cause to cease for a time, to hinder from proceeding, to interrupt, to delay, to stay." 8 Words and Phrases 6833.

The case of *Dukes* v. *State, supra,* which contains the expression above quoted has been clearly distinguished in *Board, etc.* v. *McGregor* (1909), 171 Ind. 634, 638, 87 N. E.

1, 17 Ann. Cas. 333, where it is expressly denied that the appointment in the Dukes case was an exercise of any inherent power of the court but was rather the exercise of a power implied from the statutory authority to fill a temporary vacancy caused by the absence of the regular prosecuting attorney. The writer of the opinion in the McGregor case said: "The expression 'inherent power', made with respect to an act of the court done *ex necessitate* in a matter where the authority could be reasonably implied from that expressly given, has suggested in later days grave constitutional questions." I do not believe that such power is one of the inherent and sacred prerogatives of the court.

Without extending this opinion with a discussion of the question of jury corruption, how it is to be shown, and the improper selection of a grand jury, I believe that the action of the trial court in sustaining the motion to strike out the plea in abatement was prejudicial error and for that reason alone the cause should be reversed and remanded.

NOTE.—Reported in 109 N. E. 401, 748. As to the place where a crime is deemed to have been committed, see 44 Am. St. 79. Judicial notice of geographical facts, see 12 Ann. Cas. 927. See, also, under (1) 12 Cyc. 356; (2) 31 Cyc. 636; (3) 16 Cyc. 257; 31 Cyc. 68; (5) 22 Cyc. 333; (6) 22 Cyc. 309, 310; (7) 22 Cyc. 253.